VAUGHAN v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered July 5, 1915.

1. DEEDS—DELIVERY—BURDEN TO SHOW IMPROPER DELIVERY.—Where a deed is signed, acknowledged and delivered to the grantee, who filed it for record, the presumption is that the delivery was intended, and the burden is upon the grantor to show that the deed was wrongfully delivered.

2. DEEDS—DELIVERY—PRESUMPTION.—Where there were no conditions in a deed as to when it should be delivered, and where it was in fact, signed and acknowledged by the grantor, and recorded by the grantee, the finding by the chancellor that the delivery was intended will not be disturbed on appeal.

Appeal from Prairie Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On November 19, 1908, Emmett Vaughan instituted this action in the chancery court against the Chicago, Rock Island & Pacific Railway Company to annul and set aside a deed because of no delivery and on account of non-performance of certain conditions alleged to be stated therein.

The Choctaw, Oklahoma & Gulf Railroad Company purchased the Searcy and Des Arc Railroad and desired to extend that railroad to either Hazen or DeValls Bluff on its main line. Finally it decided to extend the road from Des Arc to a point near DeVall's Bluff, and a contract was made with certain persons in Prairie County for the procurement of the right-of-way. The citizens of Des Arc wished the extension to be made along the banks of White River through the town of Des Arc, and wished the depot moved from the northwestern part of the town where it was then located to the foot of Buena Vista Street near the banks of White River. In order to secure

this the citizens of Des Arc made certain donations of property to the railroad company for its right-of-way.

Emmet Vaughan testified that he was, and for many years had been, a citizen and resident of Des Arc; that on February 24, 1903, he executed a deed to W. L. Willeford, as trustee for the Choctaw, Oklahoma & Gulf Railroad Company, conveying six lots in the town of Des Arc, the consideration recited in the deed being, "One dollar, and the further consideration that the Choctaw, Oklahoma & Gulf Railroad Company will extend the Searcy & Des Arc road from its main line through Des Arc along the river route as surveyed, and to its main line, and will agree to build a depot near the east end of Buena Vista Street in Des Arc;" that in February, 1905, Judge Willeford came to him and stated that he had been requested to procure a deed direct to the Chicago, Rock Island & Pacific Railway Company, the successor to the Choctaw, Oklahoma & Gulf Railroad Company; that at that time the railroad company had constructed its line of road along the river route, but had not moved its depot to the east end of Buena Vista Street; that on this account he at first refused to execute a new deed, but upon the representation of Judge Willeford, that the road and depot would be constructed at once, he executed a deed in lieu of the former one with the understanding that the same was to be in escrow upon the same conditions as the former deed; that the former deed had been placed in the hands of W. B. Frith, as cashier of a bank in Des Arc; that subsequently he notified one of the attorneys of the railroad company that because it had failed to build the depot, he would draw down his deed, and did go to the cashier of the bank and procure the deed which he had executed on the 24th of February, 1903; that subsequently on November 25, 1907, he conveyed the lots in question to the Hastings Industrial Company, and executed a warranty deed therefor; and that said company erected a canning factory on said lots.

Judge Willeford testified that he was the person to whom the deed of the 24th of February, 1903, was executed; that the deed, after its execution was delivered by

him to W. B. Frith, cashier of the Farmers & Merchants
Bank in Des Arc, to be held in escrow and to be delivered
to the railroad company upon the performance of the
conditions named in the deed; that he did not remember
precisely all that occurred in regard to the execution of
the second deed in 1905, but that Judge Thweatt and he
had several conversations about the matter; that he un-
derstood that this deed was to be in escrow just as the
trustee's deed above referred to; that Mr. Vaughan never
authorized him to deliver it to the Chicago, Rock Island
& Pacific Railway Company; that he understood that
neither the deed executed in 1903, or that executed in 1905
was to be delivered until the conditions above stated were
complied with; that he had no recollection of being pres-
ent when the second deed was executed, or of having seen
it after it was executed; that he was satisfied he never
had the deed in his possession; and that the citizens of Des
Arc were making every effort to get the road constructed
along the river route to DeVall's Bluff.

Judge Thweatt testified that he was a resident of
DeVall's Bluff at the time the railroad was extended from
Des Arc to a point near DeVall's Bluff; that the extension
of the road from Des Arc to Hazen was first determined
upon, but that the citizens of DeVall's Bluff induced the
railroad company to change the line to a point near De-
Vall's Bluff upon the agreement that they would furnish
the right-of-way; that Mr. Vaughan and other citizens in
the town of Des Arc had been anxious to have the road
constructed along what was called the river route through
Des Arc, and that the road was constructed along that
route before 1905, but that the depot had not been
changed from its location in the northwestern part of the
town to the east end of Buena Vista Street, near the river,
as desired by the citizens of Des Arc; that the railroad
company had contemplated moving the depot to that place
and had procured lots upon which to erect the new depot
on August 8, 1907; that the depot was not erected on the
new site until 1908, just after the filing of the present
suit; that in February, 1905, the plaintiff Vaughan exe-
cuted a deed to the lots in question and delivered the same

to him as agent for the railroad company; that no conditions were written in the deed, and no verbal conditions attached to the execution of it; that nothing was said about the location of the depot at the time of the execution of the deed; that the deed was delivered to him as agent of the railroad company, and filed for record pursuant to the directions of the officers of the company; and that there was no understanding that Vaughan's deed should be held in escrow, but that it was sent in to the company along with other deeds to property in the town of Des Arc.

The officers of the railway company in charge of its right-of-way testified that the deed in question was delivered to the railway company, and was by it filed for record.

Other testimony will be referred to in the opinion.

The chancellor found the issues in favor of the defendant railway company. The plaintiff was given permission to remove all of the improvements on the lots in question, and was declared to be the owner of such improvements. The court further found that the deed executed by Emmet Vaughan to the railway company was for a valuable consideration, and passed title to said lots to said railway company.

The plaintiff has appealed.

*Trimble & Williams,* for appellant.

1. The finding of a chancellor concerning a disputed question of fact, where the evidence is in conflict is persuasive, but not conclusive, on appeal, like the verdict of a jury. 41 Ark. 294; 13 Ark. 350; 15 Ark. 209; 23 Ark. 341.

There was no delivery of the deed. Delivery, one of the essentials of a conveyance by deed, is a question of intention of the grantor as manifested by his acts or words, or both. And to constitute a valid delivery the grantor must part with the possession of, and all dominion over, the deed. 74 Ark. 119; 98 Ark. 470; 13 L. R. A. 65; 70 U. S. 636; 3 L. R. A. (N. S.) 648. Procuring the deed and having it placed on record without the knowledge of the grantor, and while he thought it was still being held in

escrow, is not a delivery, but wholly unauthorized.  13 Cyc. 561, note; *Id.* 563, note; *Id.* 567, and cases cited; 99 Ind. 28; 96 Ind. 412; 30 Wis. 55; 11 Am. Rep. 546; 44 N. Y. Super. Ct. 190.   See, also, 100 Ark. 431, 432.

2.   If it be conceded that there was a delivery, appellee did not comply with the conditions of the deed, and no title vested, the same being a condition precedent.  1 Jones, Real Prop. & Com., § 656; 72 Ark. 310.

After condition broken, the grantor or his heirs have a vested right or interest which is assignable, and the execution by the grantor of a deed to a third party after such condition is broken, is equivalent to a re-entry, and is effectual for the purpose of declaring a forfeiture and vesting title in the subsequent grantee.   91 Ark. 415, 416, 418; 28 Ark. 54; 11 Me. 318, 320.   See, also, 90 Ark. 430; 72 Ark. 313.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellee.

The facts developed in evidence are sufficient to uphold the decree of the chancery court to the effect that the deed in question passed to appellee the title to the property.   77 Ark. 168.

HART, J., (after stating the facts).   It will be remembered that the first deed executed by Vaughan to the railway company was on the 24th day of February, 1903. This deed was in consideration that the railway company should extend its line of road along the river route as surveyed, and that it would build a depot near the east end of Buena Vista Street.   This deed was executed to Judge Willeford as trustee for the railroad company, and was placed in the hands of a bank at Des Arc to be delivered to the railway company upon the performance of the conditions named in the deed.   Vaughan testified that the deed executed by him in 1905 was upon the same conditions, and that it was their intention that the deed should be held in escrow.   It is the contention of counsel for the plaintiff that although the deed was delivered to Judge Thweatt, who was the agent of the railway company, that in procuring the deed, Judge Thweatt was deemed to oc-

cupy the relation of a third party to the transaction, and that the deed was to be held in escrow.

Judge Willeford, to a certain extent, corroborates the testimony of the plaintiff, but stated that owing to his advanced age and ill health, he does not remember the transaction very clearly, but states that his recollection is that the deed was executed upon the same conditions as the first deed, but that it was never delivered to him, and that he does not know what was done with it after it was executed.

Judge Thweatt acted as agent for the railroad company in procuring the deed in 1905. He says that the deed was delivered to him as agent for the railroad company; that no conditions were written into the deed, and that nothing was said at the time about the erection of a depot at the east end of Buena Vista Street; that the railroad company had already extended its line along the river route; and that the deed was filed for record by the railroad company.

(1) This second deed does not appear in the record, but we think it may be taken as certain that no conditions were written in it as in the first deed, because if such had been the case, the plaintiff, no doubt, would have introduced it in evidence, for, the deed having been delivered to the railway company and filed for record by it, the burden of proof was upon the plaintiff to show that it had been wrongfully delivered. The deed was signed, acknowledged and delivered to the agent of the railway company, and by it filed for record. This raises a presumption of delivery to the railway company. *Graham* v. *Suddeth,* 97 Ark. 283.

(2) One of the principal conditions imposed by the first deed, namely, that the road should be extended along the river route, had already been performed by the railway company. When we consider this circumstance, in connection with the fact that no conditions were written in the deed, as was the case when the first deed was executed, and that the second deed was not delivered to a third party to be held until the conditions were performed, and the positive testimony of Judge Thweatt that

no conditions were written in the deed, and that nothing was said about the location of the depot, we are of the opinion that it can not be said that the finding of the chancellor that the deed was delivered to the railway company, and that the title to the property in question vested in it, is against the preponderance of the evidence.

It is the settled rule of this court that findings of fact made by a chancellor will not be disturbed on appeal unless against the clear preponderance of the evidence. Tested by this rule, we are unwilling to say that the findings of fact made by the chancellor are against the clear preponderance of the evidence, and the decree will, therefore, be affirmed.